DECISION
 Facts
In May of 2006, Mr. Anthony Dilorenzo and Ms. Jamie Dimeo purchased condominium unit #25 at property located at 32 Dean Avenue in Johnston, Rhode Island ("condominium"). They financed the purchase with a mortgage for $130,500. The mortgagee was MERS, [1] though the lender was First Horizon Loan Corporation. The mortgage was later assigned to the Federal National Mortgage Association ("FNMA"). *Page 2 
Mr. Dilorenzo and Ms. Dimeo failed to timely pay their mortgages and their condominium unit fees. After giving notice to FNMA, Dean Manor Condominiums conveyed the unit at a condominium foreclosure sale on October 6, 2009. The Shirley Hurd Revocable Trust purchased the unit at the sale but has not paid the mortgage or satisfied any arrearage to FNMA.
 Issue Presented
As the mortgage continues in arrears, FNMA wishes to foreclose. It seeks, through this declaratory judgment action, to determine whether the interest of the Hurd Trust will have priority over the interests to be conveyed at the mortgage foreclosure sale.
 Analysis Should the Court Issue a Declaratory Judgment?
FNMA seeks a declaratory judgment to determine the relative priority of the interest which it seeks to convey. Specifically, it seeks to determine whether the Hurd lien will survive the mortgage foreclosure sale.
The General Assembly has empowered this Court to issue declaratory judgments in such instances:
 9-30-2. Power to Construe. — Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.
 * * * 9-30-12. Construction — This chapter is declared to be remedial; its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and *Page 3 
other legal relations; and is to be liberally construed and administered. . . .
The Court rules established a procedure for obtaining a declaratory judgment. Super. R. Civ. P. Rule 57. Though the powers to issue a declaratory judgment are discretionary for the Court, G.L. 1956 § 9-30-6, the purpose of the Declaratory Judgments Act was to afford uncertainty in future relations, G.L. 1956 § 9-30-12.
As will be discussed below, this case presents a unique question. The issue of relative priority between a mortgagee and a condominium foreclosure buyer has not yet been determined in any reported Rhode Island case. The General Assembly has modified Rhode Island General Laws Chapter 34-36.1 in 2009 P.L., Ch. 246, so it is now unlikely that the issue will be raised again. More significantly, every foreclosure seeks to maximize the sales price so as to limit the losses to the lenders and the potential exposure to the former owners. As bidders at the mortgage foreclosure auction would not know whether they are responsible to pay the Hurd Trust and the Hurd Trust does not know whether it is responsible to pay the mortgage, a declaratory judgment is appropriate. It would fulfill the purpose of the Uniform Declaratory Judgment Act which is to facilitate the determination of controversies.Capital Properties, Inc. v. State of Rhode Island,749 A.2d 1069 (R.I. 1999).[2] *Page 4 
 Does the Mortgage Have Priority Over the Lien of the Hurd Trust?
The more challenging issue is whether the mortgage has priority over the Hurd Trust. The Hurd Trust is now the owner of record of the mortgage and, as such, will receive notice of the mortgage foreclosure and will be entitled to bid. The Trust is also permitted to pay off the mortgage prior to the auction sale.
The statutes governing condominium properties and condominium unit liens are set forth in G.L. 1956, Chapter 34-36.1. If a unit owner is in arrears for unit fees, G.L. 1956, § 34-36.1-3.21(a)(1) allows the condominium association "to sell the unit of any defaulting unit owner and the benefit and equity of redemption of the defaulting unit owner . . . at public auction . . ."
 Section 34-36.1-3.21(a)(3) requires notice of the sale to all mortgagees, and establishes that the conveyance would be "in fee simple."
While the subsection declares that the condominium unit foreclosure sale shall be "a perpetual bar against the defaulting unit owner, and all persons claiming the defaulted unit, so sold, by, through or under him . . ." the statute does not expressly eradicate all claims and mortgages. The statute does not imply that the mortgage interest will be subordinated to the interests of the condominium association. The following subsections (G.L. 1956 § 34-36.1-3.2(a)(4), and 34-36.1-3.16(c)) require post sale notice to mortgagees and expressly grant a rite of redemption to the mortgagees for sixty days.[3]
More significantly, 34-36.1-3.2(b)(4) specifically defines what liens have priority over the condominium unit's sale:
 Any foreclosure sale held by the association pursuant to subsection (a) above, and the title conveyed to any *Page 5 
purchaser or purchasers pursuant to such sale, shall be subject to any lien or encumbrance entitled to priority over the lien of the association pursuant to section 34-36.1-3.16(b).
 34-36.1-3.16(b) specifies which liens are superior to the condominium unit lien being foreclosed:
 • Liens recorded prior to the recording of the condominium declaration (34-36.1-3.16(b)(i))
 • Liens for taxes or certain government charges (34-36.1-3.16(b)(iii)) and
 • Liens "a first mortgage or deed of trust on the unit recorded before the date on which the assessment sought to be enforced became delinquent." (34-36.1-3.16(b)(ii).
Accordingly, the first mortgage of FNMA has priority over the condominium lien and the Hurd Trust. The Hurd Trust took title to the condominium subject to the first mortgages. Any condominium unit assessments which were delinquent prior to the FNMA mortgage recording (May 12, 2006) have priority over the mortgage. The express language of the statute is clear. As our high court recently held:
 In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature. Additionally, it is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings. In re Kent County Water Authority Change Rate Schedules, 996 A.2d 123, 130 (R.I. 2010), citations omitted. *Page 6 
While the General Assembly, to its credit, sought to resolve any confusion by enactments after this condominium unit was sold to the Hurd Trust, the later enactment does not modify the plain language of the earlier statute.[4]
 Conclusion
The Motion for Declaratory Judgment is granted. A Declaratory Judgment shall issue granting priority to the FNMA mortgage over all condominium liens and the Hurd Trust, except those which were delinquent on or before May 12, 2006.
The Motion to Amend the Record is denied.
[1] "MERS" referred to herein is the Mortgage Electronic Registration Services, Inc. This corporation appears to receive mortgages, make assignments of mortgages, and to obtain investors for groups of mortgages. These machinations have been criticized by various courts:Landmark Nat. Bank v. Kesler, 216 P.3d 158 (Kan.,2009);Merscorp Inc. v. Romaine, 861 N.E.2d 81 (N.Y. 2006); In reSchwartz, 366 B.R. 265 (Bkrtcy. D. Mass. 2007). In Rhode Island, mortgages and assignments of mortgages have been used for over a century. By recording time-tested documents, properly drafted, the mortgage holders' interests were protected. MERS and its associates chose to deviate from the standard, time-tested practice.
On several occasions this Court has been called upon to determine the extent of MERS' interest in a mortgage. See, e.g., Bucci v.Lehman Brothers Bank, 2009 WL: 3328373 (R.I. Super, August 25, 2009). These disputes arose, in part, from MERS listing itself as a "nominee" on mortgages, while listing another financial institution as "Lender." As the financing entity traditionally prepares the mortgage documents, MERS and its associated lenders, share some blame for the confusion regarding their legal status. They opted to venture into uncharted waters.
[2] Plaintiff now seeks to add an affidavit to the record to establish that the mortgage foreclosure has not yet taken place. The prospective relationship between the two parties is not dependant upon whether the foreclosure has yet taken place, as a purpose of a declaratory judgment is to terminate uncertainty and controversy.
[3] FNMA has not exercised the right of redemption herein.
[4] Parenthetically, it would have been far easier to construe the priority of the lien and the priority of the mortgage, if the condominium unit foreclosure deed followed the format customarily used for tax foreclosure deeds in Rhode Island. Tax foreclosure deeds regularly specify dates of the tax assessments, describe the advertisements given, specify the amount of the arrearages, indicate who was given notice, and specify, in detail, the arrearages. Here, the condominium foreclosure deed does not specify which assessments are delinquent and are being foreclosed. The Court has no knowledge of what condominium unit fees were due or delinquent on the date of the foreclosure.